IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION FILE NO.: 1:22-CV-553

| | | |
|---|---|---|
| THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| FEDERAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

NOW COMES Plaintiff The North Carolina Mutual Wholesale Drug Company ("Mutual Drug"), by and through undersigned counsel, and alleges as follows:

## NATURE OF THE ACTION

1.      This is a declaratory judgment action, brought pursuant to 28 U.S.C. § 2201, *et seq.*, wherein Mutual Drug seeks a judicial determination of its contractual rights under the ForeFront Portfolio 3.0 Policy Number 8234-7252 ("Policy") issued by Federal Insurance Company ("Chubb") to Mutual Drug.

2.      Mutual Drug is a named defendant in multiple opioid prescription lawsuits.  This lawsuit involves 75 cases pending in the MDL litigation in the Northern District of Ohio ("MDL Litigation") and 40 cases pending in South

1

Carolina State Court ("SC Litigation") (collectively the "Opioid Lawsuits"). A list of the pending 115 Opioid Lawsuits is attached hereto as **Exhibit 1**.

3.　　The claimants in the underlying Opioid Lawsuits assert claims of Negligence and Public Nuisance against Mutual Drug arising out of Mutual Drug's wholesale distribution of opioid drugs.

4.　　Mutual Drug seeks a declaration that Chubb owes indemnity and defense obligations with respect to the Opioid Lawsuits pursuant to the terms of its Policy and/or prior policies issued by Chubb.

5.　　Chubb has taken the position that no coverage is afforded under the Policy for the Opioid Lawsuits based on the following two exclusions: (1) the Contract exclusion and (2) the Professional Services exclusion.

6.　　Mutual Drug takes the position that no exclusion applies that prevents or excuses Chubb from its obligations and duties under the Policy.

7.　　An actual case or controversy exists between Mutual Drug and Chubb concerning their respective rights, duties, and obligations under the Policy with respect to the claims made, and damages sought, in the Opioid Lawsuits.

## THE PARTIES

8.　　Mutual Drug is a corporation organized and existing under the laws of North Carolina with its principal place of business in Durham, North Carolina.

2

9.     Mutual Drug is a wholesale distributer of products sold by independent pharmacies, including pharmaceutical drugs.

10.     Mutual Drug is a member owned cooperative with over 500 independent pharmacies.

11.     Upon information and belief, Federal Insurance Company ("Chubb") is an insurance company organized and existing under the laws of state of Indiana with its principal place of business in Warren, New Jersey.

## JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in controversy is over $75,000 and the lawsuit involves citizens of different states.

13.     This Court has jurisdiction over the parties and venue is proper because Mutual Drug's principal place of business is Durham, North Carolina.

## FACTUAL BACKGROUND

### I.     The Insurance Policies

14.     Beginning on or about 2013, Mutual Drug was insured by Chubb for liability coverage under a ForeFront Portfolio 3.0 policy.

15.     Chubb issued the ForeFront Portfolio 3.0 Policy Number 8234-7252 ("Policy") that provided claims-made coverage for (1) Directors & Officers and Entity Liability Coverage Part; (2) Employment Practices Liability Coverage Part; and (3) Fiduciary Liability Coverage Part.  A copy of the Policy,

3

for the period of March 10, 2019 to March 10, 2020, is attached hereto as **Exhibit 2**.

16.     The Policy provides Mutual Drug with liability coverage in exchange for an annual premium of $72,246.

17.     The Policy issued to Mutual Drug provides a Combined Maximum Aggregate Limit of Liability of $10 million for all Claims under the Directors & Officers and Entity Liability Coverage Part (the "D&O Section").

18.     The liability coverage under the Policy includes both Defense Costs and Liability Coverage for damages sought in the Opioid Lawsuits.

19.     Chubb's duty to defend is much broader than its indemnity obligation. *See Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986).

20.     Mutual Drug tendered the Claims to Chubb seeking both indemnity and Defense Costs in the Opioid Lawsuits.

21.     Under D&O Section Insuring Clause (C): Entity Liability Coverage, Chubb "shall pay, on behalf of an Organization, Loss on account of a Claim first made against the Organization during the Policy Period, or the Extended Reporting Period if applicable." *See* Exhibit 2, D&O Section I.(C).

22.     Loss means the amount which an Insured becomes legally obligated to pay as a result of any Claim, including compensatory damages, punitive damages, judgments, settlements, and Defense Costs.

23.     Damages sought in the Opioid Lawsuits constitutes a covered Loss under the terms of the Policy.

24.     Defense Costs paid in defending the Opioid Lawsuits constitutes a covered Loss under the terms of the Policy.

25.     Mutual Drug has incurred Defense Costs in defense of the Opioid Lawsuits.

26.     Notwithstanding that the damages sought in the Opioid Lawsuits, and the related Defense Costs, both constitute a covered Loss, Chubb has taken the position that two exclusions in the Policy present Chubb from having any duty to defend or indemnify Mutual Drug with respect to the Opioid Lawsuits.

27.     First, Chubb takes the position that the following "Contract" exclusion contained in paragraph (B)(1) operates to deny coverage:

> **The Company shall not be liable for Loss on account of any Claim against an Organization:**
>
> **(1)     Contract**
> **Based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an Organization is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such Organization would have been liable in the absence of such contract or agreement**

28.     Mutual Drug disputes the position taken by Chubb with respect to its reliance on the "Contract" exclusion in paragraph (B)(1).

5

29. Second, Chubb takes the position that the following "Professional Services" exclusion in paragraph (B)(6)(c) operates to deny coverage:

> **The Company shall not be liable for Loss on account of any Claim against an Organization:**
>
> **(6)** _**Professional Services**_
>
> > **(c)** **the rendering of, or failure to render, any Professional Services by an Insured**

30. Mutual Drug disputes the position taken by Chubb with respect to its reliance on the "Professional Services" exclusion in paragraph (B)(6)(c).

31. The Policy issued by Chubb, by its express terms, imposes a duty to defend potentially or arguably covered claims. Mutual Drug reasonably expected that Chubb would defend it against claims that are potentially or arguably covered by the Policies. The Chubb denial or withholding of a defense against the Opioid Lawsuits have violated these reasonable expectations.

32. To date, Chubb has denied coverage and has refused to defend Mutual Drug in the Opioid Lawsuits.

33. An actual controversy thus exists between Mutual Drug and Chubb regarding Chubb's duties and obligations under the Policy.

## II. The Underlying Opioid Lawsuits

34. For purposes of analyzing the claims brought in this case, the Opioid Lawsuits are best separated into four categories: (1) 70 cases brought

by local government entities in the MDL Litigation; (2) 40 cases brought by local government entities in the SC Litigation; (3) two cases brought by private hospital corporations operating in the MDL Litigation; and (4) three cases brought by estate administrators on behalf of deceased individuals in the MDL Litigation.

### A. MDL Litigation (local government entities)

35.     Mutual Drug is a named defendant in 70 cases brought by local government entities seeking to recover damages for alleged harm from Mutual Drug's wholesale distribution of prescription opioids, including *Jones County v. Purdue Pharma L.P., et al.* The allegations in the 70 cases pending in the MDL Litigation are substantially similar for purposes of the coverage dispute.

36.     The Jones County lawsuit was initial filed in the Eastern District of North Carolina on February 26, 2019, a copy of which is attached hereto as **Exhibit 3**. Mutual Drug was not a named defendant at that time.

37.     The Jones County lawsuit was consolidated for handling as part of the Multi-District Litigation 2804 and a Short Form Supplemental Complaint was filed on June 13, 2019, naming Mutual Drug as a defendant and incorporating by reference the common factual allegations identified in the case of *The County of Summit, Ohio, et al. v. Purdue Pharma L.P., t al.* Case No. 1:18-op-45090, as may be amended in the future. A copy of the Short Form Supplemental Complaint is attached hereto as **Exhibit 4**.

7

38.    On June 14, 2019, a Notice of Lawsuit and Request to Waive Service of a Summons was issued to Mutual Drug, a copy of which is attached hereto as **Exhibit 5**.

39.    On June 18, 2019, Mutual Drug sent a letter to Chubb providing notice of the claim made by Jones County, a copy of which is attached hereto as **Exhibit 6**.

40.    In the MDL Litigation brought by local government entities as set forth in Exhibit 1, Mutual Drug is identified as a wholesale distributor defendant.

41.    Plaintiffs (local government entities) in the MDL Litigation assert claims for Negligence and Public Nuisance against Mutual Drug as a wholesale distributor of opioids.  [Exhibit 3 at ¶¶ 1 and 5].

42.    Plaintiffs (local government entities) allege that the "[o]pioid abuse, addiction, morbidity are hazards to public health and safety in the Plaintiff's Community, and constitute a temporary and continuing public nuisance, which remains unabated." [Exhibit 3 at ¶ 69].

43.    Plaintiffs (local government entities) allege that the Distributor Defendants breached their duties by failing "to monitor, detect, investigate, refuse to fill, and report suspicious orders of prescription opioids originating from" each local community.  [Exhibit 3 at ¶ 157].

44.    Plaintiffs (local government entities) allege that each "Distributor

Defendant owes a duty to monitor and detect suspicious orders of prescription opioids." [Exhibit 3 at ¶ 181].

45.    Plaintiffs (local government entities) allege that the "Distributor Defendants breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates originating from Plaintiff's Community, and/or areas from which the Distributor Defendants knew opioids were likely to be diverted to Plaintiff's Community." [Exhibit 3 at ¶ 191].

46.    Plaintiffs (local government entities) allege that the "Distributor Defendants breached their duty to maintain effective controls against diversion of prescription opiates into other than legitimate medical, scientific, and industrial channels." [Exhibit 3 at ¶ 192].

47.    Plaintiffs (local government entities) allege that the "Distributor Defendants breached their duty to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances' and failed to inform the authorities including the DEA of suspicious orders when discovered, in violation of their duties under federal and state law." [Exhibit 3 at ¶ 193].

48.    Plaintiffs (local government entities) allege that the "Distributor Defendants breached their duty to exercise due diligence to avoid filling suspicious orders that might be diverted into channels other than legitimate medical, scientific and industrial channels." [Exhibit 3 at ¶ 194].

49.    Plaintiffs (local government entities) allege that the "Distributor

9

Defendants have continued to unlawfully ship these massive quantities of opioids into Plaintiff's Community, fueling the epidemic." [Exhibit 3 at ¶ 241].

50.　Plaintiffs (local government entities) further allege that the "foreseeable harm resulting from a breach of these duties is the diversion of prescription opioids for nonmedical purposes and subsequent plague of opioid addiction." [Exhibit 3 at ¶ 185].

51.　Plaintiffs (local government entities) allege a variety of physical harms caused by the opioid epidemic, including addictions, substance abuse, morbidity, overdose, hospitalization, and death to the citizenry. [Exhibit 3 at ¶¶ 243-248].

52.　With respect to the Public Nuisance claim, Plaintiffs allege that "Defendants' unlawful actions have created a public nuisance under North Carolina law, and Plaintiff brings an action under both common law and statutory authority for abatement of that nuisance." [Exhibit 3 at ¶ 277].

53.　With respect to the Public Nuisance claim, Plaintiffs allege that "Defendants' ongoing conduct produces an ongoing nuisance, as the prescription opioids that they allow and/or cause to be illegally distributed and possessed in Plaintiff's Community will be diverted, leading to abuse, addiction, crime, and public health costs." [Exhibit 3 at ¶ 289].

54.　With respect to the Public Nuisance claim, Plaintiffs allege that "Defendants' conduct is a direct and proximate cause of the deaths and injuries

to the residents of Plaintiff's Community, costs borne by Plaintiff's Community and the Plaintiff, and a significant and unreasonable interference with public health, safety and welfare, and with the public's right to be free from disturbance and reasonable apprehension of danger to person and property." [Exhibit 3 at ¶ 301].

## B. South Carolina Litigation (local government entities)

55. Mutual Drug is a named defendant in 40 lawsuits currently pending in South Carolina state court brought by local government entities seeking to recover damages relating to the opioid epidemic. The South Carolina cases have been consolidated under a Master Amended Complaint and are currently pending in Greenville County court, C.A. 2018-CP-23-01294, a copy of which is attached hereto as **Exhibit 7**. The South Carolina cases make claims for Negligence and Public Nuisance against the distributor defendants, including Mutual Drug.

56. Plaintiffs in the South Carolina Litigation complain that Mutual Drug, as a wholesale distributor, breached its legal duties by failing to do one or more of the following: (i) distributing and selling opioids in ways that facilitated and encouraged their flow into the illegal, secondary market; (ii) distributing and selling opioids without maintaining effective controls against the diversion of opioids; (iii) choosing not to effectively monitor for suspicious orders; (iv) choosing not to investigate suspicious orders; (v) choosing not to

11

report suspicious orders; (vi) choosing not to stop or suspend shipment of suspicious orders; and (vii) failing to address or prevent the abuse and misuse of prescription opioids.  [Exhibit 7 at ¶ 1153].

57.    Plaintiffs in the South Carolina Litigation allege that Mutual Drug's negligence is a direct and proximate cause of the opioid epidemic "that has caused enormous harm and injury to the public and to Plaintiffs' communities.  [Exhibit 7 at ¶ 1168].

58.    Plaintiffs assert claims seeking damages because of bodily injuries. The allegations of bodily injury suffered by patients include "withdrawal symptoms such as severe anxiety, nausea, vomiting, headaches, tremors, delirium, blurry vision, rapid headaches, and pain if they discontinue or delay opioid use."  [Exhibit 7 at ¶ 17].

59.    Plaintiffs further allege that opioid use leads to "an increase in mental health conditions (including depression, anxiety, post-traumatic stress disorder, and substance abuse), increased psychological distress, and greater healthcare utilization."  [Exhibit 7 at ¶ 251].

60.    Plaintiffs allege damages to combat the public nuisance as follows: "Plaintiffs have incurred and continue to incur costs related to opioid addiction and abuse, including, but not limited to, healthcare costs, criminal justice and victimization costs, social costs, and lost productivity costs."  [Exhibit 7 at ¶ 62].

## C. MDL Litigation (private hospitals)

61. The private hospital plaintiffs assert claims of Negligence and Public Nuisance against Mutual Drug as a wholesale distributor. The Complaint alleges that the distributor defendants breached their legal duties to monitor, detect, investigate, refuse, and report suspicious orders of prescription opiates.

62. Plaintiffs allege that the Distributor Defendants have distributed, supplied, sold, and placed into the stream of commerce the prescription opioids, without fulfilling the fundamental duty of wholesale drug distributors to detect and warn of diversion of dangerous drugs for non-medical purposes.

## D. MDL Litigation (North Carolina Estate cases)

### 1. Claims made by the Estate of Toria Stevens

63. Mutual Drug has been named as a defendant in three wrongful death lawsuits filed by Estate Administrators, alleging bodily injury. The first case involves the death of Toria Stevens from opioid toxicity[1]. Plaintiff asserts various claims against Mutual Drug related to its role as a wholesale distributor of opioids, including Negligence and Nuisance. [Stevens Compl. ¶¶ 31, 58 and 272].

---

[1] Susan K. Stevens, Administratix of the Estate of Toria Capri Stevens, Case No. 1:20-op-45092-DAP, a copy of which is attached hereto as **Exhibit 8**.

64.     Specifically, Plaintiff alleges that the "Distributor Defendants breached their duties to exercise due care in the business of wholesale distribution and supply of dangerous opioids, which are highly regulated substances under Federal and State laws, by failing to monitor for, failing to report, and filling highly suspicious orders time and again." [Stevens Compl. ¶ 58].

65.     Plaintiff further alleges that Mutual Drug's "breaches of duty" bears a causal connection with the "damages" suffered by Toria Stevens. [Stevens Compl. ¶ 66].

66.     Plaintiff alleges that Toria Stevens "sustained injuries that directly and proximately caused her significant, severe, and painful personal injury and caused Toria to incur medical expenses." [Stevens Compl. ¶ 70].

67.     Plaintiff also asserts a Nuisance claim against Mutual Drug as a wholesale distributor and that the defendants knew, or reasonably should have known, that the distribution of opioids were likely to be diverted for non-legitimate, non-medical use, creating a strong likelihood that the "distribution of opioids" would cause death and injuries to residents in Plaintiff's community. [Stevens Compl. ¶ 285].

### 2.     Claims made by the Estate of Tyler Williams

14

68.    The second case involves the death of Tyler Williams from opioid toxicity[2]. As with the first case, the Plaintiff asserts various claims against Mutual Drug related to its role as a wholesale distributor of opioids, including claims of Negligence and public nuisance. [Williams Compl. ¶¶ 22, 31, 58 and 292].

69.    Plaintiff alleges that Mutual Drug breached its duties "by failing to monitor for, failing to report, and filling highly suspicious orders time and again." [Williams Compl. ¶ 58].

70.    The injuries alleged include "significant, severe, and painful personal injury" that proximately caused the death of Tyler Williams. [Williams Compl. ¶¶ 70 and 72].

71.    Plaintiff's negligence claim also alleges that decedent sustained injuries that proximately caused him significant, severe, and painful personal injury. [Stevens Compl. ¶ 76].

72.    Plaintiff also asserts a claim for Nuisance caused by the unlawful actions of Mutual Drug and "Defendants' failure to abate that nuisance." [Williams Compl. ¶ 272].

---

[2] Sonji B. Williams, Administrrix of the Estate of Tyler Michael Wain Williams, Case No. 1:20-op-45073-DAP, a copy of which is attached hereto as **Exhibit 9**.

73. The nuisance claim alleges "damages for Tyler's wrongful death and for Tyler's bodily injury, and associated damages, pre-death." [Williams Compl. ¶ 294].

### 3. *Claims made by the Estate of Brian Johnston*

74. The third case involves the death of Brian Johnston from opioid intoxication[3]. Plaintiff asserts claims for wrongful death, Negligence and Nuisance against Mutual Drug as a wholesale distributor of opioids. [Leysen Compl. ¶¶ 28, 58, 62, 65, 75, 272 and 282].

75. Plaintiff alleges that the "Distributor Defendants breached their duties to exercise due care in the business of wholesale distribution of dangerous opioids, which are highly regulated substances under Federal and State laws, by failing to monitor for, failing to report, and filling highly suspicious order time and again." [Leysen Compl. ¶ 58].

76. As a result, Plaintiff complains that "Brian sustained injuries that directly and proximately caused him significant, sever, and painful personal injury and caused Brian to incur medical expenses." [Leysen Compl. ¶ 70].

77. Plaintiff also claims damages "for Brian's wrongful death and for Brian's bodily injury, and associated damages, pre-death." [Leysen Compl. ¶ 83].

---

[3] Patty Carol Leysen, Administrator of the Estate of Brian Keith Johnston, Case No. 1:20-op-45107-DAP, a copy of which is attached hereto as **Exhibit 10**.

78.     Plaintiff also asserts a claim for Nuisance caused by the unlawful actions of Mutual Drug and "Defendants' failure to abate that nuisance." [Leysen Compl. ¶ 272].

79.     The nuisance claim alleges "damages for Brian's wrongful death and for Brian's bodily injury, and associated damages, pre-death." [Leysen Compl. ¶ 294].

## III.    CHUBB DENIES ANY COVERAGE OBLIGATIONS BASED ON THE CONTRACT EXCLUSION AND THE PROFESSIONAL SERVICES EXCLUSION

80.     Mutual Drug provided timely notice of the Opioid Lawsuits to Chubb.

81.     Damages sought in the Opioid Lawsuits constitutes a covered Loss under the terms of the Policy thereby triggering coverage.

82.     The Opioid Lawsuits assert Negligence and negligence-based nuisance claims, unintentional conduct that was a proximate cause of the injuries suffered.

83.     On September 18, 2019, Chubb issued a denial letter citing as justification the "Contract" exclusion and the "Professional Services" exclusion. A copy of the denial letter is attached hereto as **Exhibit 11**.

84.     Mutual Drug submitted letters to Chubb disagreeing with the coverage determination.

17

85.     On September 15, 2021, Mutual Drug, through counsel, made one final demand that Chubb provide indemnity and defense costs in connection with the Opioid Lawsuits.  A copy of the final demand letter is attached hereto as **Exhibit 12**.

86.     On December 21, 2021, Chubb once again denied, once again relying on the "Contract" exclusion and the "Professional Services" exclusion.  A copy of the December 21, 2021 denial letter is attached hereto as **Exhibit 13**.

87.     Mutual Drug seeks a declaration from this Court that Chubb owes indemnity and defense obligations pursuant to the Policy based on the claims and damages asserted in the Opioid Lawsuits and that no exclusion applies excusing Chubb from its obligations.

88.     At this time, Mutual Drug is not making a claim under Chapter 75 of the North Carolina General Statutes or under N.C.G.S. § 58-63-15(11).  However, upon discovery in this action if it is revealed that Chubb had violated these provisions, Mutual Drug hereby gives notice of its intent to amend its claims in this case.

## IV.    THE "CONTRACT" EXCLUSION DOES NOT APPLY TO BAR COVERAGE

89.     In construing coverage under an insurance policy, provisions that "extend  coverage  must  be  construed  liberally  so  at  to  provide  coverage,

whenever possible by reasonable construction." *See State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986).

90.     Exclusionary clauses are interpreted narrowly. *See State Capital*, 318 N.C. at 542.  Indeed, "provisions which exclude liability of insurance companies are not favored and therefore all ambiguous provisions will be construed against the insurer and in favor of the insured." *Id.* at 538.

91.     With respect to the "Contract" exclusion, Chubb takes the position that the claims made in the Opioid Lawsuits would not have occurred but for the existence of any membership agreement between Mutual Drug and its members.

92.     Mutual Drug is a member owned wholesaler organized to provide pharmaceuticals, goods, products, and merchandise for the benefit of its members – over 500 independent pharmacies.

93.     The membership agreement referenced by Chubb is nothing more than an internal confidential agreement among the members of Mutual Drug – a set of policies by and between the cooperative members of Mutual Drug.

94.     Under the membership agreement, the individual members of Mutual Drug agree "to abide by such policies as they currently exist and as they may be modified from time to time consistent with the Company's Bylaws."

19

95. The internal policies are "confidential information" and shall be treated as "confidential" by each member pharmacy.

96. The membership agreement established by Mutual Drug for its members are not related to the claims made against Mutual Drug by the Plaintiffs in the Opioid Lawsuits.

97. The negligence claims are not "based upon" the membership agreement.

98. The membership agreement is not even cited or mentioned in any of the Opioid Lawsuits.

99. The Contract exclusion requires that the Loss at issue be "based upon, arising from or in consequence of any liability in connection with" the purported contract.

100. The internal policies contained in the membership agreement are not identified in the Opioid Lawsuits, do not form the basis of any claim made against Mutual Drug, and do not trigger any liability under any of the Opioid Lawsuits.

101. "For an injury to arise out of an event, it must 'spring up, originate' from that event." *See Danby of N. Am., Inc. v. Travelers Ins. Co.*, 25 Fed. Appx. 186, 194 (4th Cir. 2002).

102. Not one plaintiff in any of the Opioid Lawsuits has a contractual relationship with Mutual Drug.

103.   Plaintiffs in the Opioid Lawsuits do not assert a breach of contract claim against Mutual Drug.

104.   The words "arising out of" are not defined under the Policy.  North Carolina courts have found such language to be ambiguous.   Under well-established North Carolina law, the language "arising out of," when used in an exclusion, requires the excluded cause of injury be the "sole cause of the injury to exclude coverage under the policy." *See State Capital.* 318 N.C. at 546.

105.   In the Opioid Lawsuits, there are no allegations that the damages were caused by the membership agreement.

106.   None of the claims made against Mutual Drug in the Opioid Lawsuits involves or arises out of any contract signed by Mutual Drug.

107.   None of the claims made against Mutual Drug in the Opioid Lawsuits has any connection to any contract to which Mutual Drug is a party.

108.   The Negligence claims do not arise from or in consequence of any liability involving the membership agreement.

109.   The Public Nuisance claims do not arise from or in consequence of any liability involving the membership agreement.

110.   Even if the exclusion were not subject to strict construction, there is no reasonable argument to be made that the claims of Negligence or Public Nuisance would not exist in the absence of the membership agreement.

21

111. In short, none of the claims made in the Opioid Lawsuits relate to the Company's membership agreement. Indeed, even if no such policies were in existence, Mutual Drug would still be a named defendant in the Opioid Lawsuits and the claims would be unchanged.

112. Chubb has no reasonably justified basis to deny its respective duties to defend against the Opioid Lawsuits based on the "Contract" exclusion and must comply with its duties.

## V. THE "PROFESSIONAL SERVICES" EXCLUSION DOES NOT APPLY TO BAR COVERAGE

113. With respect to the "Professional Services" exclusion, Chubb takes the position that all claims involving Mutual Drug's wholesale distribution of legal pharmaceuticals are excluded under the terms of the Policy.

114. "Professional services" is defined as follows under the Policy:

***Professional Services*** *means services which are performed for others for a fee.*

115. There are no allegations in the Opioid Lawsuits that Mutual Drug performed any service for a fee. More to the point, the claims of Negligence and Public Nuisance have nothing to do with any service performed for a fee.

116. In the context of insurance policy exclusions clauses, North Carolina courts have held that a "professional service" is generally defined as "one arising out of a vocation or occupation involving specialized knowledge or skills, and [one in which] the skills are mental as opposed to manual." *See*

22

*Duke Univ. v. St. Paul Fire and Marine Ins. Co.*, 96 N.C. App. 635, 386 S.E.2d 762, 765 (1990).

117.  It is undisputed that Mutual Drug is a named defendant in its capacity as a wholesale drug distributor.  There are no allegations in the Opioid Suits that Mutual Drug was performing any services (let alone professional services) for Plaintiffs, or citizens of the local government entities, pursuant to a professional relationship.

118.  Likewise, there are no allegations that Mutual Drug was acting as a physician, had prescribed medication, or was engaged in the retail filling of prescriptions.

119.  Under North Carolina law, coverage exclusions must be read in conjunction with the entire policy.  As to this rule of interpretation, if Chubb's arguments on the Professional Services exclusion were adopted, it "would result in the exclusion clause swallowing up the whole of the" Entity Liability coverage sold by Chubb and would render any such Entity Liability coverage contained therein illusory.  *See Alliance Mut. Ins. Co. v. Dove's Wedding* 214 N.C. App. 481, 488, 714 S.E.2d 782, 787 (2011).

120.  The Professional Services exclusion does not apply to bar coverage.

121.  Chubb has no reasonably justified basis to deny its respective duties to defend against the Opioid Lawsuits based on the "Professional Services" exclusion and must comply with its duties.

23

## FIRST CLAIM FOR RELIEF
### [Declaratory Judgment]

122. Mutual Drug repeats and realleges the preceding paragraphs.

123. The Opioid Lawsuits seek covered or potentially covered damages because of bodily injury to which Chubb's Policies apply.

124. Chubb has a duty to defend Mutual Drug against the Opioid Lawsuits, subject only to its respective limits of liability.

125. Chubb has denied or refused to acknowledge coverage, including its duty to defend, for the Opioid Lawsuits under the Policy.

126. Under 28 U.S.C. § 2201, there is an actual and justifiable controversy between Mutual Drug and Chubb with respect to Chubb's duty to defend Mutual Drug under the Policy and to provide indemnification to the claims asserted in the Opioid Lawsuits.

127. Pursuant to 28 U.S.C. § 2201, and the terms of the Policy, Mutual Drug is entitled to a declaration of its rights and Chubb's duties under the Policy, including a declaration that Defendant has a duty to defend Mutual Drug in the Opioid Lawsuits.

128. Mutual Drug also seeks a declaration that Chubb has a duty to indemnify Mutual Drug in the Opioid Lawsuits under the terms of the Policy.

## SECOND CLAIM FOR RELIEF
### [Breach of Contract]

129. Mutual Drug repeats and realleges the preceding paragraphs.

24

130.   Mutual Drug has timely tendered the Opioid Lawsuits to Chubb and has otherwise complied with its obligations under the Policy.

131.   Under the Policy, Chubb has a contractual duty to defend and indemnify Mutual Drug against claims and damages made in the Opioid Lawsuits.

132.   Chubb has unjustifiably denied any duty to defend or indemnify Mutual Drug, thereby materially breach the terms of the Policy.

133.   As a direct and proximate result of the breaches by Chubb, Mutual Drug has suffered and will continue to suffer damage in connection with amounts Mutual Drug has paid and will pay to defend itself against the Opioid Lawsuits.

WHEREFORE, Mutual Drug prays unto the Court as follows:

1.     On the First Claim for Relief, Mutual Drug requests that the Court determine and resolve this controversy by entering a Declaratory Judgment declaring that Chubb is obligated to defend Mutual Drug against the Opioid Lawsuits, as well as any future lawsuits filed against Mutual Drug alleging the same or similar claims;

2.     On the First Claim for Relief, Mutual Drug requests that the Court determine and resolve this controversy by entering a Declaratory Judgment declaring the Chubb is obligated to indemnify Mutual Drug against the Opioid

Lawsuits, as well as any future lawsuits filed against Mutual Drug alleging the same or similar claims;

3.   On the Second Claim for Relief, Mutual Drug requests that the Court enter judgment against Chubb for actual money damages in an amount in excess of $75,000 to be determined at trial, for breaches of its respective duties to defend under the Policy, including pre-judgment and post-judgment interest as allowed by common and statutory law, and such other and further relief as the Court deems just and proper;

4.   That the costs of this action, including Mutual Drug's reasonable attorney's fees as allowed by law, be taxed against Chubb;

5.   Mutual Drug demands a trial by jury on all issues so triable; and

6.   For such other and further relief as to the Court seems just and proper.

Respectfully submitted, this the 15th day of July, 2022.

FITZGERALD HANNA & SULLIVAN, PLLC


/s/ Douglas W. Hanna
Douglas W. Hanna, NCSB #18225
3737 Glenwood Avenue, Suite 375
Raleigh, NC 27612
Telephone: (919) 863-9091
Facsimile: (919) 863-9095
*Attorneys for The North Carolina Mutual Wholesale Drug Company*

26