IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION FILE NO.: 1:22-CV-553

| | |
|---|---|
| THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) **MEMORANDUM IN SUPPORT**<br>) **OF PLAINTIFF'S MOTION** |
| FEDERAL INSURANCE COMPANY, | ) **FOR LEAVE TO FILE**<br>) **AMENDED COMPLAINT**<br>) |
| Defendant. | ) |

## NATURE OF THE MATTER

Plaintiff The North Carolina Mutual Wholesale Drug Company ("Mutual Drug") respectfully seeks leave of court to amend its Complaint to add a claim for unfair and deceptive trade practices under N.C.G.S. § 75-1.1 based on discovery recently obtained in the case.

The Court has seen multiple recitations of fact in this case, so Mutual Drug will be brief. Federal Insurance Company ("Chubb") sold Mutual Drug Entity Liability Coverage for its business as a wholesale distributor of pharmaceutical products. Mutual Drug tendered the claims made in the Opioid Lawsuits to Chubb seeking both indemnity and Defense Costs in the Opioid Lawsuits. There is no dispute that the claims made in the Opioid Lawsuits are claims pursuant to the Entity Liability Coverage section. [ECF

1

Doc. 23-2 ("*Opioid lawsuits are claims pursuant to entity liability coverage section.*")]. Chubb denied the claims based on the contract exclusion and professional services exclusion. In so doing, Chubb sought to deny the claims based on Mutual Drug's business as a wholesale distributor of pharmaceutical products – the very business insured by Chubb.

In discovery, Mutual Drug requested copies of all correspondence between the parties involving the allegations in the Complaint (to include the policies issued by Chubb), any underwriting guideline that mentions the exclusions at issue in the case, and any documents relied upon by Chubb in making its decision to deny the claim. [ECF Doc. 23-5]. Because intent of the parties is always an issue when coverage decisions are made, Mutual Drug expected Chubb to produce copies of underwriting documents that would demonstrate the scope of coverage sold by Chubb. However, Chubb did not produce such documents. Arguably, Chubb did not review or consider its own underwriting documents when it sought to impose exclusions that would render illusory any Entity Liability Coverage purchased by Mutual Drug. [*Id.* (Document Request #8 – "Produce all documents relied upon by Defendant Federal Insurance Company in making the decision that no coverage is afforded under ForeFront Portfolio 3.0 Policy Number 8234-7252 for Claims made in the Opioid Lawsuits because of the Professional Services exclusion."; *see also* Document Request #9 seeking documents relied upon by Chubb in

2

denying coverage because of the Contract exclusion)] Stated another way, Chubb failed rely on its own underwriting documents when denying coverage under both the contract exclusion and professional services exclusion – documents that demonstrate the intent of the parties when Chubb sold Entity Liability Coverage to Mutual Drug.

On February 14, 2023, Mutual Drug served a Second Request for Production of Documents seeking a complete copy of the underwriting file for the ForeFront Portfolio 3.0 policies issued to Mutual Drug beginning in 2013. On April 14, 2023, after receiving an extension of time, Chubb finally produced the underwriting file documents. The documents were revealing and demonstrated the following:

1. Chubb considered the "difficult class of business" of Mutual Drug as a wholesale distributor of pharmaceutical products. [ECF Doc. 23-6].

2. Prior to selling Entity Liability Coverage in 2018, Chubb was fully aware of the opioid exposure and considered how such opioid exposure would impact Entity Liability Coverage:

> **As for the Opioid exposure, I would agree that the larger exposure lies with the manufacturers and prescribers, but certainly wholesalers will be pulled along for the ride which will drive up expense costs. I am fine with not making any changes for this exposure such as higher retentions beyond the existing $200k D&O retention.**

3

[ECF Doc. 23-6].

3.     Prior to issuing the 2019 Policy, Chubb was aware of the "opioid exposure" for the "difficult class of business" involving the wholesale distribution of pharmaceutical products. [ECF Doc. 23-6].

4.     At the time Chubb sold Entity Liability Coverage, it noted the following: "*Project possible opioid exclusion next year depending on how this year goes with the other litigation that's already out there.*" [ECF Doc. 23-6].

Upon reviewing the documents, Mutual Drug requested the deposition of underwriter Rob Chipman. On May 16, 2023, Rob Chipman provided the following testimony that supports this motion:

1.     Chubb began providing Entity Liability Coverage to Mutual Drug in 2008, collecting $700,000 in premium with no losses. [ECF Doc. 23-1 (Transcript at p. 37)].

2.     Chubb conducts an annual review process for the purpose of "re-underwriting" the file to "adjust based on exposure change, change in risk, change in strategy." [*Id.* (Transcript at p. 7)].

3.     When creating the policy, Chubb considers the specific risk needs of the insured [*Id.* at p. 16] and the nature of the insured's business. [*Id.* (Transcript at pp. 16 and 74)].

4.     Chubb understood that Mutual Drug was in the business of wholesale distribution of pharmaceutical products. [*Id.* (Transcript at p. 17)].

4

5. At the time Chubb offered and sold Entity Liability Coverage, it did so for the purpose of insuring the business of wholesale distribution of pharmaceutical products. [*Id.* (Transcript at p. 21)].

6. Chubb considered the issue of opioid exposure from both the perspective of Mutual Drug and Chubb. [*Id.* (Transcript at p. 49)].

7. Chubb considered adding an opioid exclusion but chose not to do so, thereby accepting the risk of opioid exposure. [*Id.* (Transcript at pp. 62-63)].

8. Chubb considered the profitability of the Mutual Drug account before it agreed to move forward with accepting the risk. [*Id.* (Transcript at p. 38 – "It [profit] give us an idea of our willingness to move forward with the risks")].

9. Chubb offered Entity Liability Coverage for the business of wholesale distribution of pharmaceutical products and Mutual Drug accepted. [*Id.* (Transcript at pp. 71-72)].

Following the deposition of Chubb's underwriter (Rob Chipman), the parties filed cross motions for summary judgment. The arguments of Chubb, in reliance on the contract exclusion and professional services exclusion, is at odds with the undisputed testimony that Chubb agreed to provide Entity Liability Coverage to Mutual Drug for its business, previously considered the

5

opioid exposure before it issued the Policy, and consciously chose to provide the very coverage that Chubb now seeks to avoid.

## ARGUMENT

### I. STANDARD OF REVIEW

Pursuant to Rule 15 (a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should feely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). If a moving party can show good cause to amend its pleadings, a motion for leave to amend will only be denied if amendment would be prejudicial to the other party, there has been bad faith by the moving party, or amendment would be futile. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

### II. GOOD CAUSE EXISTS TO AMEND THE PLEADINGS

The Court should allow Mutual Drug to amend. Mutual Drug considered bringing an unfair and deceptive trade practices claim originally, as it documented in its initial Complaint. [ECF Doc. 1 at ¶ 88]. Based on newly discovered evidence, Chubb's denial of coverage is unreasonable and constitutes a violation of N.C.G.S. § 75-1.1 and N.C.G.S. § 58-63-15(11).

Discovery obtained late in the case provides a window into the underwriting process on the policies sold to Mutual Drug, revealing the true intent of Chubb. During the annual underwriting of the policies issued to Mutual Drug, Chubb fully understood the business risk involved in the Entity

6

Liability Coverage. Chubb also considered the risk of opioid exposure before selling Entity Liability Coverage to Mutual Drug in 2018. Indeed, Chubb's underwriter met with representatives of Mutual Drug and asked questions about the known opioid exposure before issuing the policy.

During the underwriting process for the 2019 Policy, Chubb again considered the risk of opioid exposure and considered the option of adding a specific opioid exclusion, before deciding against doing so. Chubb fully understood the business of a wholesale distributor of pharmaceutical products and assumed the risks, including the risk of opioid exposure.

Prior to issuing its denial, Chubb failed to conduct a reasonable investigation by reviewing its own underwriting file, failed to confirm the intent of the parties regarding the coverage sold by Chubb, and failed to confirm the fact that Chubb previously considered the opioid risk but, notwithstanding the risk, chose to consciously insure the business operations of Mutual Drug. It did so because it was looking to avoid coverage, actions that are contrary to North Carolina law. Apparently, Chubb had no motivation to uncover true facts that supported coverage of the Claims made in the Opioid Lawsuits.

Chubb sold coverage to Mutual Drug for its business as a wholesale distributor of pharmaceutical products only to take away such coverage based on the misapplication of two exclusions. If the sale and distribution of

7

pharmaceutical products is excluded, then the coverage sold would be meaningless. Chubb contends that its exclusions are so broadly worded as to exclude the entirety of the business insured under the Entity Liability Coverage. Courts have commented that interpreting exclusionary provisions so broadly as to vitiate all coverage undermines the purpose of having an insurance policy. *Holcomb v. United States Fire Ins. Co.*, 52 N.C. App. 474, 279 S.E.2d 50 (1981) ("While we believe that broad, general provisions for coverage under a policy may properly be limited by specific exclusions, we have extreme difficulty endorsing broad, general exclusions which seek to render illusory narrow and specific provisions of coverage.").

It would also create liability to Chubb for the intentional sale of coverage that it knew had no value and would, in fact, provide no coverage for the business of wholesale distribution of pharmaceutical products. *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 30-33, 376 S.E.2d 488, 494-96 (1989) (reversing trial court's summary judgment order for insurer on insured's claims for fraud, unfair trade practices, and negligence arising out of sale of worthless insurance policy).

The newly discovered evidence provides a compelling case that the decision by Chubb to deny the claim was made in bad faith and in violation of the North Carolina Unfair and Deceptive Trade Practices Act.

No further discovery is necessary by Mutual Drug on its amended claim.

8

Case 1:22-cv-00553-CCE-JEP   Document 29   Filed 06/30/23   Page 8 of 16

However, Mutual Drug has no objection to allowing Chubb further discovery on the amended claim. Chubb will not be prejudiced by allowing this motion.

### III. THE AMENDMENT IS MADE IN GOOD FAITH AND THE CLAIM OF UNFAIR AND DECEPTIVE TRADE PRACTICES IS A MERIORIOUS CLAIM

Mutual Drug acted in good faith when it decided not to pursue extra-contractual claims without strong evidence of the improper and unreasonable investigation conducted by Chubb prior to issuing its denial. The newly discovered evidence provides a rarely seen look into the underwriting process, the facts considered by Chubb when it engaged in the sale of insurance in North Carolina, and Chubb's conscious decision to accept the risks that are at issue in the Opioid Lawsuits.

After reviewing the newly discovered evidence, Mutual Drug acted in a good faith manner, and within a reasonable amount of time, by filing Plaintiff's Motion for Leave to File Amended Complaint seeking to add one claim for a violation of North Carolina's Unfair and Deceptive Trade Practices Act.

The claims are based on detailed deposition testimony and internal documents produced by Chubb late in discovery. With the newly discovered evidence, Mutual Drug now seeks to make a claim for unfair and deceptive trade practices pursuant to N.C.G.S. § 75-1.1 for Chubb's unscrupulous behavior, including violations of N.C.G.S. § 58-63-15(11). Chubb denied the

9

claims based on an unreasonable interpretation of both the contract exclusion and professional services exclusion.

The actions taken by Chubb during the claim process violated various portions of N.C.G.S. § 58-63-15(11)(a). Chubb has misrepresented the scope and applicability of the contract exclusion and professional services exclusion in violation of N.C.G.S. § 58-63-15(11)(a), a violation of which is a violation of N.C.G.S. § 75-1.1. *See Country Club of Johnston Cty. v. U.S. Fid & Guar. Co.*, 563 S.E. 2d 269 (2002). As the proposed amendment notes:

1. Chubb's general business practice of denying claims without confirming the actual coverage sold is a violation of N.C.G.S. § 58-63-15(11)(c).

2. Chubb's unreasonable denial of the claims forced Mutual Drug to initiate litigation in order to secure benefits paid for, and contracted for, under the Policy.

3. A review of the underwriting documents reveals, in part, the following:

    a. Chubb considered the "difficult class of business" of Mutual Drug as wholesale distributor of pharmaceutical products when it sold Entity Liability Coverage to Mutual Drug.

    b. Prior to selling Entity Liability Coverage in 2018, Chubb was fully aware of the opioid exposure and considered how such opioid exposure would impact Entity Liability Coverage.

10

c. Chubb knew that Mutual Drug operated as a "wholesaler" but consciously chose to accept the "Opioid exposure" and the related risk of Defense Costs based on the retention amount of $200,000 in the Policy.

d. Prior to issuing the 2019 Policy, Chubb was aware of the "opioid exposure" for the "difficult class of business" involving the wholesale distribution of pharmaceutical products.

e. At the time Chubb sold Mutual Drug Entity Liability Coverage, it noted the following in its internal underwriting documents: "*Project possible opioid exclusion next year depending on how this year goes with the other litigation that's already out there.*"

4. Testimony provided by the Chubb underwriter reveals the following:

a. When creating the policy, Chubb considers the specific risk needs of the insured and the nature of the insured's business.

b. At the time Chubb offered and sold Entity Liability Coverage, it did so for the purpose of insuring the business of wholesale distribution of pharmaceutical products. Indeed, Chubb understood that it was the only line of business conducted by Mutual Drug.

11

c. As a wholesaler, Chubb knew that Mutual Drug sold products to both members and nonmembers. Chubb never asked questions about how products were sold to customers because it was not relevant to coverage.

d. Chubb considered the issue of opioid exposure from both the perspective of Mutual Drug and Chubb.

e. The underwriter was aware of opioid exposure and discussed the exposure with Mutual Drug because they had exposure relative opioids.

f. With respect to the issue of opioid exposure, internal communications document the fact that Chubb understood it assumed risks, including the risk of Defense Costs.

g. Chubb understood that it assumed risk under the Entity Liability Coverage for the risk of opioid exposure.

h. Chubb considered adding an opioid exclusion but chose not to do so.

i. In consciously agreeing to accept the risk of opioid exposure, Chubb considered the profitability of the Mutual Drug account.

5. Chubb consciously chose to accept the risk of opioid exposure but then gave an unwarranted and unreasonable interpretation of its contract exclusion to deny coverage.

6. The position taken by Chubb in this case supports the claim that Chubb knowingly and fraudulently sold Mutual Drug worthless coverage, engaging in commerce in North Carolina, and collected a premium payment for defrauding Mutual Drug. This fraud is an unfair and deceptive trade practice under North Carolina law.

7. Chubb's denial based on two exclusions never meant to apply to Mutual Drug is an unfair and deceptive trade practice, immoral, unscrupulous and an inequitable use of bargaining power in violation of N.C.G.S. § 75-1.1.

8. Chubb's denial misrepresents provisions relating to coverage at issue in violation of N.C.G.S. § 58-63-15(11)(a).

9. Chubb's failed to reasonable investigate the facts of the claims submitted by Mutual Drug, and failed to consider its own documents, in violation of N.C.G.S. § 58-63-15(11)(c).

10. Chubb's denial and refusal to pay Defense Costs, without conducting a reasonable investigation based upon all available information, is a violation of N.C.G.S. § 58-63-15(11)(d).

11. Chubb's denial of coverage, and failure to pay Defense Costs, is a violation of N.C.G.S. § 58-63-15(11)(f).

12. Chubb's denial of coverage, and failure to pay Defense Costs, compelled Mutual Drug to institute litigation in violation of N.C.G.S. § 58-63-15(11)(g).

For these reasons, especially given the liberal applicable standard, this Court should allow Mutual Drug to file and serve its Amended Complaint.

Respectfully submitted, this the 30th day of June 2023.

                       FITZGERALD HANNA & SULLIVAN, PLLC

                       /s/ Douglas W. Hanna
Douglas W. Hanna, NCSB #18225
3737 Glenwood Avenue, Suite 375
Raleigh, NC 27612
Telephone: (919) 863-9091
Email: dhanna@fhslitigation.com
*Attorneys for The North Carolina Mutual Wholesale Drug Company*

14

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(d)

I hereby certify that the body of the brief, excluding the caption, signature lines, certificate of service and index, is in compliance with Local Rule 7.3(d).

This the 30th day of June 2023.

/s/ Douglas W. Hanna
Douglas W. Hanna

## CERTIFICATE OF SERVICE

I hereby certify that on this day, the foregoing **MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Janet R. Davis and Kristie M. Abel.

This the 30th day of June 2023.

*/s/ Douglas W. Hanna*
Douglas W. Hanna