IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 1:22-CV-553 |
| FEDERAL INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**ORDER**

In this insurance coverage dispute, the parties have filed cross-motions for summary judgment. Because the policy provides coverage and neither exclusion identified by the insurer applies, declaratory judgment will be entered for the insured.

I.   **Undisputed Facts**

The North Carolina Mutual Wholesale Drug Company ("Mutual Drug") is a member-owned cooperative with several hundred independent pharmacy members. It is a wholesale distributer of pharmaceutical drugs to its member pharmacies and other independent pharmacies.

The defendant, Federal Insurance Company referred to here as "Chubb," insured Mutual Drug for several years, until March 2020, under a claims-made liability policy. Doc. 1-2 (last relevant policy). For covered claims, the policy provides for reimbursement of defense costs and for liability coverage for directors, officers, and the entity. *Id.* at 13.

Mutual Drug is a defendant in several dozen lawsuits concerning opioid prescriptions in which various municipalities, hospitals, and individuals assert tort and statutory claims against it. *See, e.g.*, Doc. 1-7; Doc. 1-9; Doc. 1-10; Doc. 1-11. In general, the opioid lawsuits allege Mutual Drug is liable for failure to monitor, detect, investigate, and refuse to fill suspicious orders by pharmacies for prescription opioids, in violation of federal and state law and regulations and in breach of common law duties. *See, e.g.*, Doc. 1-7 at ¶ 169; Doc. 1-9 at ¶ 58; Doc. 1-10 at ¶ 58; Doc. 1-11 at ¶ 58.

None of the underlying lawsuits raise breach of contract claims. None were filed against Mutual Drug by any of its members or customers. None arise out of a direct relationship between Mutual Drug and the ultimate users of opioid prescription medicine.

Chubb has refused to indemnify Mutual Drug for its defense costs and liabilities. The parties agree that the opioid lawsuits fall within the general coverage provisions of the policies, but Chubb contends that coverage is excluded under two specific exclusions: a "contract" exclusion and a "professional services" exclusion.

Other undisputed facts will be set forth as they become relevant.

II.  **Law**

Mutual Drug, as the insured, "has the initial burden of bringing itself within the insuring language of the policy." *John S. Clark Co., Inc. v. United Nat'l Ins. Co.*, 304 F. Supp. 2d 758, 764 (M.D.N.C. 2004) (cleaned up). "[T]he burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Alliance Mut. Ins. Co. v. Dove*, 214 N.C. App. 481, 483, 714 S.E.2d 782, 784 (2011). North Carolina "courts are not favorably disposed toward provisions limiting the scope of

2

coverage," so "exclusions are 'to be strictly construed to provide the coverage which would otherwise be afforded by the policy.'" *Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 454, 481 S.E.2d 349, 356 (1997).

The interpretation of language in an insurance policy is a question of law for the courts. *See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co.*, 472 F.3d 99, 115–16 (4th Cir. 2006); *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 512, 428 S.E.2d 238, 241 (1993). It is well established under North Carolina law that insurance policies are contracts and are construed using contract law principles. *See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000).

"Where a policy defines a term, that definition is to be used." *Id.* (cleaned up). "[A]ny undefined, nontechnical word is 'given a meaning consistent with the sense in which [it is] used in ordinary speech, unless the context clearly requires otherwise.'" *State v. Philip Morris USA, Inc.*, 363 N.C. 623, 632–33, 685 S.E.2d 85, 91 (2009). To ascertain the ordinary meaning of undefined terms, North Carolina courts consult standard, nonlegal dictionaries. *C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., Inc.*, 326 N.C. 133, 152, 388 S.E.2d 557, 568 (1990).

"Where an insurance policy's language is clear and unambiguous," courts "enforce the policy as written." *Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., Inc.*, 254 N.C. App. 741, 744, 802 S.E.2d 173, 175 (2017); *see also, e.g.*, *ABT Bldg. Prods. Corp.*, 472 F.3d at 115–16. On the other hand, if a policy provision remains ambiguous, it must be construed in favor of the policyholder. *ABT Bldg. Prods. Corp.*, 472 F.3d at 116; *Markham*, 481 S.E.2d at 356. Ambiguity in a policy provision exists only when, "in the

3

opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 354, 172 S.E.2d 518, 522 (1970).

### III. Analysis

#### A. Coverage

Chubb has not responded to Mutual Drug's briefing in which it establishes coverage, Doc. 23 at 6–7, and directs all its arguments to the two exclusions. The coverage language is broad and covers any "Loss on account of a Claim first made against [Mutual Drug] during the Policy Period." Doc. 1-2 at 31, § I.(C). "Loss" is defined as "the amount which an Insured becomes legally obligated to pay as a result of any Claim," including compensatory and punitive damages, settlements, and defense costs. *Id.* at 34, § IV. Mutual Drug has met its initial burden to show coverage.

#### B. Exclusions

##### 1. The "Contract" Exclusion

The relevant policies contain an exclusion of coverage for certain contract-related liability. Specifically, the policy provides:

> The Company shall not be liable for Loss on account of any Claim against an Organization:
> (1) Contract
> based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an Organization is a party, provided that this Exclusion (B)(1) shall not apply to the extent that such Organization would have been liable in the absence of such contract or agreement.

Doc. 1-2 at 37, § V(B)(1).

4

This exclusion does not apply to preclude coverage for the opioid litigation. None of the claims against Mutual Drug are based on any contract, and Chubb has pointed to no language in any of the complaints that relies on or even mentions any contract to which Mutual Drug is a party.

Chubb says that the opioid cases "arise from" liability "in connection with" Mutual Drug's contracts with its customers, *see, e.g.*, Doc. 25 at 16, Doc. 30 at 2–3, Doc. 27 at 10–13, specifically "membership agreements" with independent pharmacies and Mutual Drug, Doc. 24-3, customer agreements with non-member pharmacies, Doc. 24-4, and credit applications. Doc. 24-5. Chubb contends that because the plaintiffs in the opioid lawsuits base their liability claims on Mutual Drug's role as a wholesale distributor of pharmaceuticals and that role is accomplished through contracts with its customers, the claims "arise from" Mutual Drug's contracts. *See, e.g.*, Doc. 25 at 16.

But none of the claims in the opioid lawsuits arise even indirectly from these contracts. Many arise from duties imposed under the common law and others from regulatory duties. While the language in the exclusion is broad, the claims must have some connection to the contracts. To the extent the contract language is ambiguous, it should be interpreted in favor of the insured.[1] The fact that the claims arise out of the insured's business and that the insured uses contracts in its business is not enough.

---

[1] Neither "arising from" or "in connection with" are terms explicitly defined in the policy. North Carolina courts have repeatedly recognized that the phrase "arising from" is, in the absence of a definition in the policy, an ambiguous term. *See, e.g.*, *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 73–74 (1986); *N.C. Farm Bureau Mut. Ins. Co., Inc. v. Cox*, 263 N.C. App. 424, 446–47, 823 S.E.2d 613, 628–29 (2019).

5

The extrinsic evidence also supports Mutual Drug's position. Chubb points to no evidence tending to indicate that the parties understood the contract exclusion to apply to claims like those made in the opioid lawsuits. *See e.g.*, Doc. 25 at 16–19 (Chubb's brief citing no evidence at all); Doc. 27 at 11–15 (response brief similarly void of citations to evidence); Doc. 30 at 4–5 (reply brief citing evidence only that Mutual Drug has contracts with its members and customers). And Mutual Drug has submitted overwhelming and uncontradicted evidence that both parties were aware of the possibility of lawsuits over the distribution of opioids and contemplated that the policy would cover such litigation. *See* Doc. 23-1 at 12, 14, 16–17;[2] Doc. 23-6; Doc. 23-7.

Chubb makes an unclear and murky argument, seemingly asserting that the policy only protects officers and directors. Doc. 27 at 7–9. But the policy itself covers the "entity," Doc. 1-2 at 31, § I.(C), which Chubb acknowledges. Doc. 27 at 8–9 (noting that it "agreed to provide coverage . . . to . . . an entity in the business of wholesale distribution of pharmaceuticals"). Cases involving policies that only insure directors and officers do not apply.

### 2. The "Professional Services" Exclusion

The relevant policies contain an exclusion of coverage for claims against the insured related to professional services. The policy states:

> The Company shall not be liable for Loss on account of any Claim against an Organization:
> (6) Professional Services

---

[2] The Court has used the pagination appended by the CM-ECF system for this and other deposition cites, not the internal pagination used by those transcribing the deposition.

6

Case 1:22-cv-00553-CCE-JEP   Document 34   Filed 08/17/23   Page 6 of 10

> based upon, arising from or in consequence of the rendering of, or failure to render, any Professional Services by an Insured.

Doc. 1-2 at 37–38, § V(B)(6)(c).

The policy defines "professional services" as "services which are performed for others for a fee," *id.* at 35 § IV, but it includes no definition of the words "professional," "services," or "fee."

The professional services exclusion does not bar coverage for the opioid litigation. The claims against Mutual Drug center on the plaintiff's commercial activity: the sale and distribution of pharmaceutical products. Chubb has pointed to nothing in the opioid litigation complaints alleging that Mutual Drug provided professional services, or indeed any services at all, to any plaintiff.

Chubb maintains that the opioid lawsuit claims relate to professional services because Mutual Drug conducted compliance reviews for customers, as mandated by federal, state, and local regulatory and licensing requirements for the sale and distribution of pharmaceutical products, which Chubb characterizes as "services" for a fee. Doc. 25 at 19–20; Doc. 27 at 15–16. But the "fee" it identifies is the cost of the pharmaceutical products, Doc. 25 at 20, Doc. 27 at 17, and it points to nothing to indicate that Mutual Drug charged a specific fee to undertake compliance duties on behalf of any customer. And, as already noted, the opioid lawsuits do not allege any services for a fee provided by Mutual Drug to any plaintiffs, nor do they allege any professional relationship between Mutual Drug and the plaintiffs. The complaints allege regulatory and common law violations, like negligence, involving the sale and distribution of commodities. *See, e.g.*,

7

Doc. 1-3 at ¶¶ 5, 157, 179; Doc. 1-7 at ¶¶ 34, 598, 600, 615; Doc. 1-9 at ¶ 58; Doc. 1-10 at ¶ 58; Doc. 1-11 at ¶ 58.

The defined term, "professional services," cannot logically be read as broadly as Chubb asserts. The common understanding of the word "services" means an act of labor that does not involve a tangible commodity.[3] Mutual Drug is a commercial distributor of tangible pharmaceutical commodities, and its primary business is to sell products for a price. The cases on which Chubb relies concern services that do not involve producing tangible commodities. *See, e.g.*, *TrialCard Inc. v. Travelers Cas. & Sur. Co.*, No. 19-CV-368, 2020 WL 1609483, at *1 (E.D.N.C. Apr. 1, 2020) (marketing and advertising services); *Philadelphia Indem. Ins. Co. v. Ronin Staffing LLC*, No. 20-CV-374, 2022 WL 628518, at *1 (W.D.N.C. Mar. 3, 2022) (pharmaceutical treatment services); *Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990) (medical treatment services). Mutual Drug's compliance reviews also fall outside of the policy's "professional services" definition because Mutual Drug conducts the reviews to comply with its own obligations under federal, state, and local laws and regulations for the sale of pharmaceuticals and not in exchange for a separate fee from its customers. *See* Doc. 26 at 29–30.

---

[3] A "standard, nonlegal dictionar[y]" states that service means "the act of serving: such as . . . useful labor that does not produce a tangible commodity" and provides the contextual example: "charge for professional services." *Service*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/service (last visited Aug. 14, 2023); *C.D. Spangler Constr. Co.*, 388 S.E.2d at 568.

Chubb's broad proposed interpretation of the term "professional services" is inconsistent with the strict construction courts give to exclusions. *See Markham*, 481 S.E.2d at 356. Chubb's interpretation would transform every simple commercial transaction into a professional service if the sale involved commodities subject to a distributor's compliance with any one of a multitude of regulatory or licensing requirements. It is hard to think of anything the policy would cover if Chubb's sweeping interpretation were adopted.

Finally, to the extent "arising from" is an ambiguous term, *see supra* note 1, Mutual Drug has provided uncontradicted evidence that the parties were aware of the risk of lawsuits over the distribution of opioids and contemplated that the policy would cover such litigation. *See* Doc. 23-1 at 12, 14, 16–17; Doc. 23-6; Doc. 23-7. Chubb has not provided any evidence demonstrating the parties understood the professional services exclusion to apply to claims like those made in the opioid lawsuits. *See, e.g.,* Doc. 25 at 19–24; Doc. 27 at 15–17; Doc. 30 at 9–10.

IV. **Motion to Amend**

Mutual Drug seeks leave to file an amended complaint adding claims for unfair and deceptive trade practices under the N.C. Gen. Stat. § 75-1.1. Doc. 28; *see* Doc. 28-2 at ¶¶ 133–67 (proposed amended complaint adding claim). The Court reserves ruling on this issue and will enter a separate order as time permits.

V. **Conclusion**

Mutual Drug has shown that the policies issued by Chubb provide coverage, and Chubb has not shown that any exclusions apply. Mutual Drug is entitled to summary

9

judgment in its favor on the breach of contract claim and to a declaratory judgment establishing coverage.

If the motion to amend is not allowed, the only issue for trial is damages on the breach of contract claim, *see* Doc. 1 at 26 ¶ 3, which the Court suggests the parties attempt to resolve by agreement. The Court further suggests that the parties reconsider their settlement positions.

It is **ORDERED** that:

1. The plaintiff's motion for leave to file an amended complaint, Doc. 28, remains under advisement.
2. The plaintiff's motion for summary judgment, Doc. 22, is **GRANTED**.
3. The defendant's motion for summary judgment, Doc. 24, is **DENIED**.
4. Counsel **SHALL** immediately meet and confer about the form of an appropriate declaratory judgment in hopes of reaching agreement. It would be helpful to the Court if counsel submitted a proposed declaratory judgment by September 5, 2023.
5. By email to the case manager, either party may request a settlement conference with a Magistrate Judge, if that would be helpful.

This the 17th day of August, 2023.

UNITED STATES DISTRICT JUDGE

10

Case 1:22-cv-00553-CCE-JEP   Document 34   Filed 08/17/23   Page 10 of 10